UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMY N. HENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:16-cv-03383-DML-RLY |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social Security, ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## Decision on Complaint for Judicial Review

This matter comes before the court on the plaintiff's complaint seeking judicial review of the Commissioner's decision denying plaintiff's application for social security disability benefits. The parties have consented to the undersigned's jurisdiction. For the reasons that follow, the court reverses and remands.

## Introduction

Ms. Henson applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act, alleging she has been disabled since November 3, 2012. Acting for the Commissioner of the Social Security Administration following a hearing in May 2015, an administrative law judge (ALJ) issued a decision on July 29, 2015, finding that Ms. Henson has not been disabled from the alleged onset date through the date of his decision. The Appeals Council denied review of the ALJ's decision on October 24, 2016, rendering the ALJ's decision for the Commissioner final. Ms. Henson

timely filed this action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Henson argues that the Commissioner's decision must be reversed and remanded because the ALJ erred in weighing the opinions of her treating medical providers, Timothy M. Lenardo, M.D., Ronald F. Baldwin, M.D., and Thomas E. Rea, Psy.D. She also argues that the ALJ's listings analysis was perfunctory and unsupported, and she maintains the ALJ erred in failing to consult a medical expert on the question of medical equivalence. Finally, Ms. Henson argues that the step 5 finding lacks an adequate foundation. In particular, she challenges the vocational expert's testimony about the number of jobs available for her to perform and the reliance on the *Dictionary of Occupational Titles*. The court will first describe the legal framework for analyzing disability claims, the standard of review and the ALJ's findings, and then address the assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (supplemental security income (SSI) benefits).[1] Ms. Henson is disabled if her impairments are of

---

[1] Two disability-benefits programs are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability

2

such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, work experience, and residual functional capacity, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is

---

benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq*. The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

3

presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, education, and RFC; if so, she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

**Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a

4

scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence, but he cannot ignore an entire line of evidence that undermines his conclusions, and he must provide sufficient detail to allow a reviewing court to trace the path of his reasoning. *See Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012). And the ALJ "must build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Ms. Henson was 28 years old on the alleged disability onset date, and 31 years old at the time of the ALJ's decision. The ALJ found she met the insured status requirements of the Social Security Act through March 31, 2017, and she had not engaged in substantial gainful activity since the alleged onset date of November 3, 3012. At steps two and three, he identified Ms. Henson's severe impairments as rheumatoid arthritis, osteoarthritis, fibromyalgia, carpal tunnel syndrome, and Behcet's syndrome, but concluded no impairment or combination of impairments meets or medically equals the severity of a listed impairment.

In the RFC, the ALJ limited Ms. Henson to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the restrictions that she can occasionally

5

climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently handle bilaterally; can occasionally finger bilaterally; needs to avoid concentrated exposure to moving mechanical parts and unprotected heights; and needs to use a cane to ambulate, walk, and balance. (R. 16). The ALJ found Ms. Henson is unable to perform any past relevant work. Based on her age, education, work experience, and RFC, the ALJ determined she can perform other work that exists in significant numbers in the national economy, such as call out operator and surveillance system monitor. (R. 21). He therefore concluded she is not disabled under the Social Security Act.

## II. Ms. Henson's Assertions of Error

### A. The Weighing of Treating Source Opinions

Ms. Henson challenges the ALJ's decision to give "little weight" to Dr. Lenardo's opinions of her condition and impairments. In September 2012, Dr. Lenardo wrote that Henson suffers from Behcet's disease and fibromyalgia, was under his care, and had been since November 2001. (R. 397.) He noted she suffers from swelling, pain, and severe stiffness of her joints, with a focus on her left knee, and she had failed trials of various medications. Dr. Lenardo indicated laboratory tests showed Ms. Henson has elevated C-reactive protein and sedimentation rate levels. His exam findings include active synovitis. Dr. Lenardo opined on Ms. Henson's limitations (R. 398) and noted she suffers from "severe fatigue and does not tolerate working full 8 hour shifts nor any night shift work." (R. 398).

6

In March 2015, Dr. Lenardo again offered opinions about Henson's condition and limitations, noting she was "currently undergoing aggressive immunosuppressive and analgesic therapy" for rheumatoid arthritis, Behcet's disease, and fibromyalgia. (R. 975). He described her conditions as "chronic" and indicated they "have proven extremely difficult to control." (*Id.*) He noted her pain, morning stiffness in her joints and muscles, "daily fatigue," and "other cognitive difficulties." (*Id.*) His exam findings reflected active synovitis, tender points, and reduced grip strength. Dr. Lenardo wrote that Ms. Henson's "musculoskeletal conditions have proven refractory to all treatments thus far," and he did not expect "any meaningful recovery of function or return to the work force." (*Id.*)

A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and is not consistent with other evidence in the record.[2] 20 C.F.R. §404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). The ALJ gave Dr. Lenardo's opinions "little weight" because the ALJ found they were "not supported by the objective evidence," some of his opinions were given before Ms. Henson's alleged onset date and during a previously adjudicated period, and the ultimate determination of disability is reserved for the Commissioner. (R. 19–20). The ALJ erred in weighing Dr. Lenardo's opinions.

---

[2] This treating physician rule applies to claims filed before March 27, 2017. *See* 20 C.F.R. §404.1527 (2017).

First, the ALJ misunderstood fibromyalgia. Its symptoms, such as muscle pain, fatigue, and depression, "are entirely subjective," and no objective test can determine "the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996); *see also Aidinovski v. Apfel*, 27 F. Supp. 2d 1097, 1103 (N.D. Ill.1998) ("By definition [a claimant's] fibromyalgia diagnosis means that in all likelihood her accounts of pain and fatigue will seem out of proportion with the available objective evidence."). Some of the symptoms of fibromyalgia are treated as "signs" under the Social Security ruling on the evaluation of fibromyalgia. SSR 12-02p, 2012 WL 3104869, at *3 n.9 (July 25, 2012). Further, the ALJ found Ms. Henson suffers from fibromyalgia; indeed, he determined it was a severe impairment, which means that it is a "medically determinable" impairment that that "significantly limits" her ability to perform basic work activities. 20 C.F.R. § 404.1520(c).

In concluding that Dr. Lenardo's opinions were not supported by the objective evidence, the ALJ noted that "[a]t times," Ms. Henson's "back and joints have been essentially normal"; she has demonstrated full range of motion in her back and joints; she has been "neurologically intact" with good motor and sensory functions, and intact reflexes; she has demonstrated a normal gait without ataxia; she has had no edema in her extremities; and her grip strength has been no worse than 4/5. (R. 20). The ALJ did not explain how these normal and relatively normal exam findings detract from Dr. Lenardo's opinions of Henson's condition and limitations; the ALJ relied on findings that are used to rule out conditions other than fibromyalgia. *See, e.g., O'Brien v. Berryhill*, No. 17 C 0272, 2017 WL 4921960, at *5 (N.D. Ill. Oct. 31, 2017) ("There is no evidence indicating that fibromyalgia causes

8

limitations in strength, range of motion, or an inability to walk."); *Lanzi-Bland v. Berryhill*, No. 16 C 8856, 2017 WL 4797529, at *3–4 (N.D. Ill. Oct. 24, 2017) (concluding ALJ's decision to give "little weight" to treating physicians' opinions was not supported by substantial evidence or sufficiently explained where ALJ relied on irrelevant exam findings such as "normal range of motion, motor strength, reflexes, and gait" and lack of "neurological deficits").

Even if the ALJ gave good reasons for not giving Dr. Lenardo's opinions "controlling weight," the ALJ nonetheless erred by giving them "little weight" without considering the factors identified in 20 C.F.R. § 404.1527(c). The regulations provide that an ALJ will consider the treatment relationship's length, nature, and extent, the frequency of examination, the supportability for the opinion, the consistency with other evidence, and the treating physician's specialization. 20 C.F.R. § 404.1527(c); *see also Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). The ALJ noted Dr. Lenardo is a rheumatologist, which is the appropriate specialty for autoimmune disorders like fibromyalgia, Behcet's, and rheumatoid arthritis. But the ALJ did not mention Dr. Lenardo had been treating Ms. Henson for 14 years or that objective laboratory tests reflected elevated levels of C-reactive protein and erythrocyte sedimentation rates (*see* R. 480, 484, 493, 496, 500), indicating inflammation, which supports findings of fibromyalgia and rheumatoid arthritis, and in turn lends support to Dr. Lenardo's opinions. Other objective medical findings are supportive of Dr. Lenardo's opinions too: for example, his exam findings of muscle and joint tenderness. (R. 405, 451). The ALJ also did not

9

consider that Dr. Lenardo's opinion was consistent with the opinions of other treating medical sources, Dr. Baldwin and Dr. Rea (who thought Henson was limited mostly by her physical condition).

While some of Dr. Lenardo's opinions were given before the alleged onset date and in a previously litigated period, that fact does not detract from his more recent opinions given in the relevant period. Recognizing Dr. Lenardo noted in 2013 that Ms. Hanson's condition had deteriorated (R. 405), his opinions are consistent with each other and consistent with other record evidence. And while the ultimate determination of disability is reserved to the Commissioner, 20 C.F.R. §404.1527(d)(1), an ALJ must consider medical opinions on the nature and severity of a claimant's impairments, *id.* § 404.1527(d)(2), as well as medical opinions on issues reserved to the Commissioner. *Stiles v. Berryhill*, 242 F. Supp. 3d 773, 787 (S.D. Ind. 2017) (stating an ALJ "must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner") (quoting SSR 96-5p)). Therefore, the ALJ's decision to give Dr. Lenardo's opinions little weight is not supported by substantial evidence or sufficient explanation, and a remand is necessary for further consideration of these opinions.

Ms. Henson also challenges the ALJ's decision to give "little weight" to Dr. Baldwin's opinions. A primary care physician, Dr. Baldwin states he has expertise in the treatment of mental health disorders. (R. 399). He noted Ms. Henson has "disabling major depression, generalized anxiety, and borderline personality

disorders." (*Id.*) In 2012, he opined that her mental conditions and Behcet's have interfered with her ability to maintain employment. Dr. Baldwin also noted that Ms. Henson's mental health conditions cause "severe insomnia problems." (*Id.*) He found her medical conditions "numerous, severe, and disabling" and did not think she would ever recover from her disabilities. (*Id.*)

Although Dr. Baldwin opined on both Ms. Henson's physical and mental impairments, in explaining his reasons for giving the doctor's opinions little weight, the ALJ cited only normal or relatively normal *physical* exam findings. (R. 20). He did not identify any findings on mental examination that detract from Dr. Baldwin's opinions about Ms. Henson's *mental* impairments and limitations. And just as the ALJ did not explain how the objective evidence detracted from Dr. Lenardo's opinions, he failed to explain how they detracted from Dr. Baldwin's opinions. And even if the ALJ had good reasons for not giving "controlling weight" to Dr. Baldwin's opinions, the ALJ failed to evaluate them under the regulatory factors. For example, he never considered that both Dr. Baldwin and Dr. Rea, Ms. Henson's treating psychologist, diagnosed her with major depression and borderline personality disorder. The ALJ's decision to give Dr. Baldwin's opinions "little weight" is not supported by substantial evidence or a sufficient explanation, and a remand is necessary for further consideration of his opinions.

Ms. Henson similarly challenges the ALJ's decision to give "some evidentiary weight" to Dr. Rea's opinions. Dr. Rea gave opinions about Ms. Henson's mental health and limitations in 2012, 2013, and 2015. Most recently, he wrote that she

11

was referred based on "concerns related to longstanding mixed depressive and anxiety symptomatology, affective lability and intensity in her interpersonal relationships." (R. 978). Although the ALJ noted that some of Dr. Rea's opinions were given before the alleged onset date and during a previously adjudicated period, he never mentioned the consistency of his opinions over time, that he had been treating Ms. Henson for several years, or that he had seen her on numerous occasions (15 occasions by April 2013 (R. 742)). The ALJ explained that Dr. Rea's opinions "appear to be based primarily on the claimant's subjective complaints and are not supported by the record as a whole." (R. 15). Yet the ALJ cites no objective measure for depression. And depression has been recognized as a symptom of fibromyalgia, *see Sarchet*, 78 F.3d at 306, which the ALJ found was one of Ms. Henson's severe impairments. This may lend support to Dr. Rea's opinions. The ALJ also noted that at times Ms. Henson's mood and affect have been normal or appropriate. (R. 15). Yet waxing and waning symptoms "are not inconsistent with a diagnosis of recurrent, major depression." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). An individual with depression is likely to have good days and bad days. The ALJ's decision to give Dr. Rea's opinions little weight is not supported by substantial evidence or adequate explanation. Thus, a remand is needed to allow the ALJ to give further consideration to Dr. Rea's opinions.

### B. Other Assertions of Error

Ms. Henson challenges the sufficiency of the ALJ's listing analysis and failure to consult a medical expert on the issue of medical equivalence. Ms. Henson

was represented by an attorney at the hearing before the ALJ, and the ALJ noted that her attorney did not even argue that her impairments met or equaled a listing. (R. 16). And while the court may agree that the ALJ's listing analysis is perfunctory, the ALJ did identify the listings he considered. More importantly, even now, Ms. Henson has not identified the evidence that suggests she meets or equals all of the criteria for any of the listings at issue. And it is apparent that the ALJ relied on the state agency medical consultants' opinions that Ms. Henson did not meet or equal a listing. (R. 19).

Yet Ms. Henson argues the consultants did not have the benefit of reviewing the entire record, and no expert reviewed the additional evidence covering a two-year period. While an ALJ must receive an updated medical opinion "[w]hen additional medical evidence is received that *in the opinion of the administrative law judge* or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments," *Martin v. Berryhill*, No. 1:17-cv-00366-RLY-DML, 2017 WL 6767377, at *5 (S.D. Ind. Dec. 19, 2017) (quoting SSR 96-6p, 1996 WL 374180, at *3-4 (emphasis in original)), Ms. Henson fails to identify the evidence that would change the medical equivalence analysis. The court finds no reversible error here.

Finally, Ms. Henson contends the ALJ's step five finding lacks foundation, arguing that the job and job descriptions the vocational expert relied on are outdated, that there is no evidence as to how the jobs are currently performed, and

that there is no evidence as to how the expert calculated the number of jobs available. A vocational expert's testimony can constitute substantial evidence to support a step five finding if the testimony is reliable. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). A vocational expert "is free to give a bottom line, provided that the underlying data and reasoning are available on demand." *Id.* And "[i]f the basis for the expert's opinions is questioned at the hearing, the ALJ should "make an inquiry … to find out whether the purported expert's conclusions are reliable." *Id.* An ALJ may rely on the *Dictionary of Occupational Titles* (the *DOT*) "to define the job as it is *usually* performed." SSR 82-61, 1982 WL 31387, at *2 (1982) (emphasis in original); *see also Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) ("ALJs often rely heavily on … the *DOT* ….").

Ms. Henson had counsel at the hearing, but the attorney did not pose any questions to the vocational expert or otherwise challenge the reliability of the expert's bottom-line conclusions (R. 68). And because Ms. Henson's counsel did not object to the vocational expert's reliance on the *DOT*, Ms. Henson must point out a "readily identifiable" error in the expert's testimony to show reversible error. *Willis v. Berryhill*, No. 1:17-cv-00615-JMS-DML, 2017 WL 5157885, at *8 (S.D. Ind. Nov. 7, 2017). She has not done so.[3]

---

[3] Though the Seventh Circuit has criticized vocational expert testimony, *see, e.g., Browning v. Colvin*, 766 F.3d 702, 708–12 (7th Cir. 2014) (criticizing vocational expert testimony about the number of jobs the plaintiff could perform), as well as the *DOT*, *see, e.g., Herrman v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014) (referring to the *DOT* as "an obsolete catalog of jobs"), it has yet to reverse an ALJ's decision because it relied on vocational expert testimony, which in turn, relied on the *DOT*.

## Conclusion

For the foregoing reasons, the court reverses and remands this action under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

So ORDERED.

Date: 3/13/2018

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

---

*See Everhart v. Berryhill*, No. 4:17-cv-00076-TAB-SEB, 2018 WL 446323, at *2 (S.D. Ind. Jan. 17, 2018).